1  AMY K. VAN ZANT (STATE BAR NO. 197426)
   avanzant@orrick.com
2  JASON K. YU (STATE BAR NO. 274215)
   jasonyu@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA  94025-1015
   Telephone:    +1 650 614 7400
5  Facsimile:    +1 650 614 7401

6  Attorneys for Plaintiff
   TALKDESK, INC.
7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12  TALKDESK, INC.,                          Case No. 3:22-cv-4515

13              Plaintiff,                    **COMPLAINT FOR:**
                                              **(1) Breach Of Contract;**
14         v.                                 **(2) Breach Of Implied Covenant;**
                                              **(3) Breach Of Fiduciary Duty;**
15  ENGINEER.AI CORP., a Delaware             **(4) Unjust Enrichment;**
    corporation, and ANDREW PHAM,             **(5) Fraudulent Misrepresentation;**
16                                            **(6) Fraudulent Concealment;**
              Defendants.                     **(7) Negligent Misrepresentation;**
17                                            **(8) Tortious Interference;**
                                              **(9) Breach Of Contract;**
18                                            **(10) Breach Of Implied Covenant;**
                                              **(11) Attempted Extortion;**
19                                            **(12) Civil Conspiracy;**
                                              **(13) Unfair Competition; and**
20                                            **(14) Declaratory Relief;**

21                                            **Demand for Jury Trial**

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

Plaintiff Talkdesk, Inc. ("Plaintiff" or "Talkdesk") brings this complaint against Andrew Pham, aka Andrew Thahn Pham, Thanh Nhu Pham, and Andy Pham ("Pham"), Engineer.ai Corp., d/b/a Builder.ai and SB Squared ("Engineer"). Talkdesk hereby alleges as follows:

## INTRODUCTORY SUMMARY

1.      Plaintiff Talkdesk provides software and services for the contact center as a service ("CCaaS") market.

2.      Defendant Pham served as a senior in-house attorney for Talkdesk from on or about June 16, 2019 until July 31, 2020, when Talkdesk terminated his employment.  Since being fired, Pham has brazenly violated the fiduciary and contractual duties owed to Talkdesk as its former attorney. Pham's misconduct has culminated in him entering into a conspiracy with former Talkdesk vendor and Pham's new employer, Defendant Engineer.ai Corp. ("Engineer") to attempt to extort Talkdesk into making millions of dollars in un-owed payments to each of Pham and Engineer.  Defendants threatened to publicly disclose false claims of internal malfeasance at Talkdesk (that neither Defendant has standing to bring) using information and knowledge that Pham claims to know as a result of working as Talkdesk when he was its in-house counsel.

3.      Defendants Pham and Engineer's list of unethical and unlawful misconduct is as long as it is audacious.  Pham's transgressions began the moment he took a job as in-house counsel at a company based in California, Verint Systems, Inc. ("Verint").  Pham was licensed by the State Bar of Wisconsin but lacked a State Bar of California license.  Pursuant to California Rule of Court 9.46, attorneys licensed out of state who wish to practice as in-house counsel in California must complete the requirements listed in that rule, including registering as in-house counsel with the State Bar of California.  Pham did not complete the requirements to register as in-house counsel during his more than 10 years at Verint serving as its Associate General Counsel, Global Intellectual Property, or during his year at Talkdesk as its most senior in-house counsel at that time.  During the years 2009-2014, even Pham's State Bar of Wisconsin license was suspended, meaning he practiced in California with no license from anywhere for those five years.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

COMPLAINT
CASE NO. 3:22-CV-4515

4.      Most recently, Pham has switched loyalties to support his current employer, Engineer, as its top lawyer and General Counsel in assisting in preparing and prosecuting two breach of contract cases filed in Los Angeles[1] against Talkdesk, both concerning that same Talkdesk/Engineer vendor agreement ("the MSA") that Pham himself previously negotiated, drafted, and executed for Talkdesk as its attorney.  The complaint that Engineer filed against Talkdesk is rife with alleged internal Talkdesk information that only Pham could have provided.

5.      Among other things, Pham has, on multiple occasions, provided legal advice adverse to Talkdesk on issues and matters for which he personally provided legal services for Talkdesk when he was its attorney and used, disseminated, and relied on Talkdesk protected information that he learned while serving as Talkdesk's attorney.

6.      Specifically, in the year following Pham's termination from Talkdesk, Pham reached out to potential targets to aid him in a plot to get back at Talkdesk for firing him.  By December 2021, Talkdesk engaged counsel to send a letter reminding Pham of his ongoing fiduciary and contractual obligations to Talkdesk and, specifically, that he should not use or disclose his former client's protected information.  That letter precipitated a response from Pham's personal lawyer, Stephen Lobbin, who responded with a December 18, 2021 letter attempting to extort Talkdesk.  Specifically, Lobbin demanded that Pham be paid what amounts to millions of dollars in cash and stock options that he was not owed in exchange for signing a confidentiality agreement pursuant to which Pham would essentially agree to "keep quiet" about alleged corporate malfeasance he supposedly was aware of at Talkdesk as a result of having been its lawyer.  Lobbin expressly conditioned Pham's agreement to abide the fiduciary duties **he already owed Talkdesk** on receiving the shakedown payoff demanded.  Talkdesk refused and

---

[1]     Engineer originally filed a complaint for breach of contract against Talkdesk in federal court in the Central District of California, but was forced to dismiss the case after the court issued an order to show cause for lack of federal diversity, failure to name a necessary party (Engineer.ai Corp.) and improper venue.  *See Engineer.ai Global Ltd., et al. vs. Talkdesk, Inc.,* Case No. 2:22-cv-02510 (C.D. Cal., April 13, 2022), Dkt Nos. 1 (Complaint), 10 (Order to Show Cause), and 11 (Dismissal). Although Judge Percy Andersson in C.D. Cal. had determined that the case was required to be filed in San Francisco per the relevant forum selection clause, Engineer persisted with re-filing in Superior Court in Los Angeles County instead.  *See Engineer.ai Corp., et al. vs. Talkdesk, Inc.,* Case No. 22STCV22161 (Superior Court, Los Angeles County, July 9, 2022) at Dkt. 1.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612                                    - 3 -                          COMPLAINT
CASE NO. 3:22-CV-4515

warned Pham that there was no malfeasance. Talkdesk reiterated that Pham owed and must abide his contractual, ethical, and fiduciary duties without receiving the demanded hush money payoff.

7.     At some point, Pham joined efforts with his co-conspirator Defendant Engineer. Engineer is a disgruntled former Talkdesk vendor with whom Talkdesk had a contract dispute. Pham knew about the contract dispute between Talkdesk and Engineer because, while has working as an attorney for Talkdesk, Pham advised Talkdesk about its contractual relationship with Engineer.  In fact, Pham personally negotiated and signed the contract on behalf of Talkdesk.  Pham also advised Talkdesk regarding disputes over the contract and negotiated with Engineer's CEO and self-designated "Chief Wizard," Sachin Duggal, as Talkdesk's in-house attorney as well.

8.     Following Pham's termination from Talkdesk, however, he decided to switch sides in the dispute and help Engineer assert a claim for breach of contract as part of a plan to negotiate a shakedown payoff from Pham's former client and employer, Talkdesk.  On information and belief, in early 2021, Pham drafted and/or provided input on a settlement demand letter that Engineer sent to Talkdesk.  That letter expressly referenced Pham's role in negotiating and signing the agreement.  The letter also referred to Pham as Talkdesk's former "Chief of Staff," which is a title that Pham routinely used for himself at Talkdesk even though that was not his role or title.

9.     At some point, Engineer hired Pham as its General Counsel.  Engineer then replaced its former litigation counsel with Pham's personal attorney, Stephen Lobbin.  On behalf of Engineer, Lobbin subsequently filed a complaint for breach of contract against Talkdesk in the Central District of California ("the First Engineer Complaint").  The pleading appeared to contain input from Pham. Even though the complaint stemmed from Talkdesk's simple contract dispute with Engineer, the pleading was rife with bizarre and irrelevant insinuations about Talkdesk's "corporate ethics" and suggested that Engineer intended to harass Talkdesk with irrelevant discovery demands.

10.     Two days after filing the First Engineer Complaint, on April 15, 2022, Lobbin sent Talkdesk a letter stating that he now represented Engineer (not Pham this time) and Engineer was

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

COMPLAINT
CASE NO. 3:22-CV-4515

4142-9890-3612

1    not going to serve Talkdesk with the First Engineer Complaint at that time.  Instead, Lobbin

2    stated that Engineer intended to file an amended complaint and attached a copy of that amended

3    complaint to his letter.  Notably, Pham (Lobbin's other client) was cc'd on this letter in his role as

4    Engineer's General Counsel. The draft amended complaint contained even more bizarre and

5    irrelevant insinuations about the alleged "bad ethics" of the company that echoed the same

6    malfeasance claims Pham had made in his December 17 letter from Lobbin, demonstrating that

7    both Pham and Engineer were using and leveraging protected information that Pham had learned

8    while working as Talkdesk's attorney.  Lobbin further stated that he would publicly file the draft

9    amended complaint (including the additional allegations) unless Talkdesk paid Engineer nearly

10   $6.8 million dollars by May 2, 2022.  Lobbin also intimated that, if the case were to move

11   forward, he would use discovery in the irrelevant allegations and issues as a weapon to embarrass

12   Talkdesk.

13          11.    The April 15 letter was itself a sham, however, because the Court had already *sua*

14   *sponte* issued an order to show cause over concerns that Engineer was intentionally omitting the

15   real plaintiff to try to make a case for diversity jurisdiction when there appeared to be no diversity

16   and the contract clearly called for jurisdiction in San Francisco.  Engineer did not fight the OSC

17   but instead withdrew the First Engineer Complaint without prejudice on April 25. Engineer never

18   bothered to serve Talkdesk throughout this process, showing the First Engineer Complaint to be

19   another shakedown threat and not a good faith pleading.

20          12.    Ignoring the Central District Court's determination that San Francisco was the

21   venue for any dispute about the Talkdesk/Engineer contract, Engineer filed another complaint for

22   breach of contract ("the Second Engineer Complaint") of its agreement with Talkdesk on June 9,

23   2022 in the Superior Court for the County of Los Angeles.  The Second Engineer Complaint now

24   referred to Pham as the "Talkdesk Negotiator" without actually using his name.  The Second

25   Engineer Complaint makes a series of false allegations about alleged communications between

26   Pham and Engineer's Chief Wizard, Sachin Duggal, in negotiating the contract, i.e., when Pham

27   was acting as Talkdesk's attorney.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 5 -

COMPLAINT
CASE NO. 3:22-CV-4515

13.     Though the Second Engineer Complaint alleges that Duggal – Engineer's CEO and "Chief Wizard" – somehow "learned" of all kinds of alleged internal malfeasance at Talkdesk, the information could have only come from someone who actually worked at Talkdesk in the first instance. While Pham continued to hide his own identity behind the "Talkdesk Negotiator" designation, Engineer and Pham identified two Talkdesk senior executives by name to allege they had a "sexual and romantic relationship" – an allegation that has no bearing whatsoever on Engineer's alleged contract-related claims and was clearly designed to embarrass and harass the Talkdesk's executives.

14.     Notably, Lobbin was once again counsel of record on the Second Engineer Complaint.  He is also counsel of record in litigation Pham filed in September 2020 against another former Pham employer, Verint Systems, Inc. ("Verint").  Lobbin is also counsel of record on a complaint Engineer recently filed against the outside counsel of record on a pending Engineer employment dispute that is set for trial in August 2022.  Engineer is demanding over a billion dollars in that suit.

15.     In addition to the foregoing, Pham is not now and never has been licensed or registered to practice law in California, whether as in-house or outside counsel.  Despite his lack of credentials, Pham has nonetheless practiced law as in-house counsel in California while continuously and regularly residing here while working at both his prior employer Verint and at Talkdesk.  Pham practiced law continuously and regularly while at Verint even though the only law license he had (from the State Bar of Wisconsin) was suspended for a period of 5 years while working there.  Pham has also been publicly reprimanded and placed on probation by the United States' Patent and Trademark Office.

16.     Pham is currently in litigation with his former employer, Verint, where he also served as in-house counsel.  In that litigation, Verint alleges that Pham practiced law in the State of California without having the necessary license, credentials, or registrations to do so.

17.     But for Pham's material misrepresentations and omissions in interviewing for the Talkdesk in-house lawyer position, Talkdesk would not have hired him.  Talkdesk has been damaged and seeks reimbursement and return of all compensation (both cash and equity) that

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

COMPLAINT
CASE NO. 3:22-CV-4515

4142-9890-3612

Talkdesk paid to Pham under false pretenses. Talkdesk continues to be damaged and irreparably harmed by Pham and Engineer's ongoing attempted extortions and intentional unlawful use of information Pham is duty bound to protect as Talkdesk's former attorney.

18.    In sum, extortionary misconduct against former clients is a pattern for Pham and he has now found a willing partner in Engineer to expand the reach of his extortionary efforts. Talkdesk brings this litigation to end Defendants' extortionary scheme. Talkdesk seeks injunctive relief and monetary damages for Defendants' misconduct.

## PARTIES

19.    Talkdesk is a Delaware Corporation having a principal place of business in California. Talkdesk has maintained its principal place of business in San Francisco, California and has been and remains qualified to do business in California at all relevant times. A substantial number of the events and injuries described herein took place in San Francisco County.

20.    Engineer is a Delaware Corporation and on information and belief its principal place of business is in Utah. Engineer has marketed and sold its services into San Francisco County and, on information and belief, regularly does so.

21.    On information and belief, Pham is an individual residing in, and a citizen of, the State of Wisconsin.

## JURISDICTION AND VENUE

22.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

23.    The Court has personal jurisdiction over Talkdesk because Talkdesk's principal place of business is in California. The Court has personal jurisdiction over Engineer because Engineer regularly conducts business in California and because Engineer consented to jurisdiction in California. Specifically, as further alleged below, Engineer and Talkdesk entered into a contract in which they agreed that the jurisdiction for resolving any disputes would be "determined by the location of [Talkdesk]," which, at the time and at present is San Francisco, California. The Court has personal jurisdiction over Mr. Pham because Mr. Pham consented to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 7 -

COMPLAINT
CASE NO. 3:22-CV-4515

1   jurisdiction here.  As further alleged below, Talkdesk and Mr. Pham entered into a contract in

2   which they agreed that they would "submit to the exclusive personal jurisdiction of the federal

3   and state courts located in San Francisco County in connection with any Dispute or any claim

4   related to any Dispute."  Mr. Pham has also filed and is maintaining litigation in California and,

5   specifically, in the Superior Court of California, Santa Clara County.  Moreover, during the

6   relevant time period Mr. Pham owned at least one home in Modesto, California and worked in the

7   San Francisco Bay area.

8          24.     Venue is proper in this district under 28 U.S.C. § 1391(b).  Plaintiff Talkdesk and

9   Defendant Pham agreed that any dispute related to Pham's employment would be brought

10  exclusively in the federal or state courts of San Francisco County, California.  Likewise, Talkdesk

11  and Engineer agreed that any disputes would be filed in San Francisco, California (i.e., where

12  Talkdesk's headquarters were located at the time the MSA was signed).  Moreover, Defendant

13  Pham's employment contract was entered into and to be performed in San Francisco County.

14  Likewise, the MSA was entered into in San Francisco on behalf of Plaintiff Talkdesk, and

15  Defendant Engineer submitted invoices to Plaintiff Talkdesk at its San Francisco, California

16  address and routinely communicated with Talkdesk employees based in San Francisco County

17  regarding the MSA.

18                         **Pham's Employment With Talkdesk**

19         25.     In or around May 2019, Pham interviewed for an in-house attorney position in San

20  Francisco, California with Talkdesk. During the interview process, Talkdesk relied on Pham to be

21  truthful, forthcoming, and accurate in representing his qualifications to work as an in-house

22  attorney in California. Talkdesk would only later learn that Pham misled the company about his

23  status as a qualified and licensed lawyer in California.

24         26.     In fact, Pham is and has only ever been licensed to practice as an attorney in

25  Wisconsin, and before the U.S. Patent and Trademark Office ("PTO") as a licensed patent agent.

26  Pham has not ever been licensed to practice law in California, though he has resided here

27  continuously between at least 2009-2020.  On information and belief, Pham has not ever registered

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

COMPLAINT
CASE NO. 3:22-CV-4515

1    as in-house counsel in California, though he oversaw litigation for Verint, among other

2    responsibilities, while residing continuously in California.

3          27.    Pham intentionally omitted that he was not licensed, registered, or qualified to

4    practice in California during his in-house counsel interviews at Talkdesk.  Pham intentionally

5    misled Talkdesk into falsely believing that he was licensed, registered, and qualified to perform

6    the in-house attorney position in California at Talkdesk for which he applied when, in fact, he

7    knew or should have known that he had attended law school in Wisconsin, had only passed the

8    Wisconsin State Bar, and had taken no steps to become licensed, registered, or qualified as an

9    attorney in California.

10          28.    During the Talkdesk in-house counsel interview process, Pham intentionally

11    omitted and actively concealed the fact that the only place he had ever been licensed to practice

12    law was with the State Bar of Wisconsin but that he had regularly and continuously practiced in

13    the State of California as in-house counsel since, on information and belief, at least 2007, at his

14    former employer, Verint.  In addition, Pham intentionally omitted the fact that the State Bar of

15    Wisconsin suspended Pham for a period of <u>five years</u> by while he was employed as an in-house

16    lawyer at Verint in California, but he continued to practice anyway. Pham also intentionally

17    withheld and actively concealed that he had been disciplined by the PTO and placed on probation

18    for a period of 36 months.  Had Pham not omitted these material facts during the in-house counsel

19    interview process, Talkdesk would not have hired Pham for an in-house attorney position or any

20    other position at the company.

21          29.    Based on Pham's material misrepresentations and omissions, and without

22    otherwise being aware of the information that Pham concealed, Talkdesk offered Pham a position

23    as in-house counsel with the title of "Senior Vice President, Business and Counsel" in May 2019.

24          30.    Pham executed an employment agreement with Talkdesk on May 16, 2019 ("the

25    Pham Agreement").  The Pham Agreement stated that all disputes regarding Pham's employment

26    would be filed in federal or state court in San Francisco County. By accepting Talkdesk's offer of

27    employment, Pham acknowledged that as a condition of employment he would be required to

28    sign a "Proprietary Information and Inventions Agreement" ("PIIA"), which included his promise

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 9 -

COMPLAINT
CASE NO. 3:22-CV-4515

to honor the PIIA. On May 28, 2019, Pham executed the PIIA as required by Talkdesk's offer of employment.

31.     Section 1 of the PIIA states, "I have not retained anything containing any confidential information of a prior employer or other third party, whether or not created by me." On information and belief, this statement was false at the time Pham signed the PIIA, including because according to his prior employer, Verint, he had maintained two USB drives containing Verint's confidential and privileged information.

32.     Section 4 of the PIIA requires Pham to hold in confidence and not disclose any "Proprietary Information" he learns, develops, or obtains during the course of his employment with Talkdesk.  The PIIA defines "Proprietary Information" to include all "business, technical, and financial information (including, without limitation . . . information relating to customers or employees)" that Pham learned or gained knowledge of during his employment as Talkdesk's attorney or received by or for Talkdesk "in confidence."  Section 4 also requires Pham to return all items containing proprietary information upon termination of his employment with Talkdesk. As discussed below, Pham has violated Section 4 of the PIIA by, among other things, disclosing Talkdesk Proprietary Information to unauthorized third parties and misusing Talkdesk Proprietary Information for personal benefit.

33.     Section 8 of the PIIA states that Pham's obligations under paragraphs 2-5, 8 and 9 of the PIIA "shall continue in effect after termination of [Pham's] employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary."

34.     Section 9 of the PIIA also states that "any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, [Talkdesk] will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond."

35.     Pham began his position as in-house counsel at Talkdesk on June 3, 2019.  Pham's job duties included the review and negotiation of contracts, reviewing and supervising Talkdesk's IP assets and patent portfolio, negotiating and resolving disputes, managing 2-3 other in-house attorneys on the Talkdesk legal team, and supervising litigation. Pham was responsible for

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY
4142-9890-3612
- 10 -
COMPLAINT
CASE NO. 3:22-CV-4515

1    recommending and hiring outside counsel for Talkdesk. Pham regularly gave legal advice to

2    Talkdesk's executives and employees, and managed the actions of both in-house and outside

3    counsel.  In doing so, he continued to misrepresent himself as qualified and licensed or registered

4    to perform the position he held, even though he was not.

5         36.    Throughout his employment at Talkdesk, Pham held himself out as qualified to

6    practice as in-house counsel in California, and Talkdesk reasonably believed that he was so

7    qualified.  For example, Talkdesk reasonably believed that Pham was qualified to practice as an

8    attorney in California as in-house counsel to a California company and that he was lawfully

9    acting as a licensed or registered California attorney and agent on Talkdesk's behalf. Talkdesk

10   also reasonably relied on Pham to know and follow the required rules for an out of state licensed

11   attorney to lawfully practice as in-house counsel in California. Talkdesk continued to rely on

12   Pham to know and comply with his obligations as an out-of-state-licensed, in-house lawyer in

13   California throughout the time he worked for Talkdesk.

14        37.    Due to Pham's role as an in-house attorney at Talkdesk and the closely held nature

15   of the company at the time, he had extensive access to Talkdesk's sensitive, confidential, and

16   proprietary information during his tenure.  This included information about human resource

17   issues, company policies and procedures, and purported claims of wrongdoing or malfeasance

18   asserted against the company, as well as keeping Talkdesk's confidences about any sensitive

19   information he learned as a result of being Talkdesk's in-house counsel. Talkdesk trusted Pham to

20   act faithfully and loyally for Talkdesk's benefit, and expected Pham to acknowledge and accept

21   this trust and confidence as he was required to do as an attorney acting on Talkdesk's behalf.

22        38.    In February and March 2020, Pham, acting in his role as Talkdesk's in-house

23   counsel, negotiated, drafted (with help from others at Talkdesk), and ultimately executed the

24   March 4, 2020 MSA with Engineer, signing his name as "SVP, Business and Counsel." In and

25   around July 2020 a dispute with Engineer regarding payment had arisen and, Pham, in his role as

26   Talkdesk's in-house lawyer, advised Talkdesk and participated in negotiations with Engineer's

27   CEO and Chief Wizard, Sachin Duggal, regarding a payment dispute about the MSA. In other

28   words, in his role as Talkdesk's attorney, Pham was privy to protected Talkdesk information

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 11 -

COMPLAINT
CASE NO. 3:22-CV-4515

related to the MSA contract and dispute, including, for example, Talkdesk's legal strategy for resolving that dispute.

39.     In only one year on the job as an at-will employee, Pham had proven himself to be untruthful, rude, and lacking the skills necessary to successfully perform the job of in-house counsel at Talkdesk.  The company ultimately decided to terminate Pham's employment effective July 31, 2020.

### Talkdesk and Engineer End Their Relationship.

40.     Talkdesk had a relationship with an Amazon Web Services ("AWS") billing vendor and Engineer predecessor-in-interest, SB Squared, since approximately 2016.  SB Squared managed Talkdesk's invoicing with AWS and in exchange, Talkdesk received a discounted rate.

41.     When Mr. Pham joined Talkdesk in 2019, he resolved to re-negotiate the Talkdesk agreement with SB Squared, who was by then going alternately by the names of Builder.ai and Engineer.ai.  As previously discussed, Pham was responsible for negotiating, drafting, and executing the Talkdesk/Engineer March 4, 2020 MSA in his role as Talkdesk's in-house counsel. Pursuant to the March 2020 MSA, Talkdesk could be eligible to receive discounts from Engineer on Talkdesk's AWS invoices if Talkdesk hit certain usage levels specified in the MSA.

42.     From the start of billing under the 2020 MSA, Engineer failed to uphold its obligations.

43.     Under Section 4.2 of Appendix B to the MSA, Engineer was required to submit to Talkdesk an invoice by the 4th day of every month "based on the Clients' AWS usage costs." Engineer, however, frequently backdated its invoices and billed Talkdesk for anticipated growth and not on actual usage.

44.     For example, on or around May 6, 2020, Engineer provided to Talkdesk an invoice backdated May 4, 2020, for Talkdesk's AWS usage for the month of April 2020 ("EA/BCL/2021/00001"). On May 10, 2020, Engineer sent Talkdesk another invoice for April 2020 ("EA/BCL/2021/00013"), once again improperly backdated to May 4, 2020.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 12 -

COMPLAINT
CASE NO. 3:22-CV-4515

45.     On or around June 10, 2020, Engineer provided an invoice to Talkdesk backdated to June 4, 2020, for Talkdesk's AWS usage for the month of May 2020 ("EA/BCL/2021/00027").

46.     On or around July 8, 2020, Engineer provided an invoice to Talkdesk backdated to July 4, 2020, for Talkdesk's AWS usage for the month of June 2020 ("EA/BCL/2021/00039").

47.     On or around September 14, 2020, Engineer provided an invoice to Talkdesk backdated to September 4, 2020, for Talkdesk's AWS usage for the month of August 2020 ("EA/BCL/2021/00067").

48.     In or around September 2020, Talkdesk determined that it would stop using the Engineer billing services for most of its AWS billing accounts going forward. This would mean that Talkdesk would lose the discount it had been receiving on whatever accounts it kept with Engineer on a going forward basis. While the MSA provided for up to a 12-month discount program, it also permitted Talkdesk to reduce its usage to zero or even terminate the agreement pursuant to Section 9.1 at any time so long as Talkdesk provided 30 days' written notice. In addition to providing termination notice, the MSA purported to require Talkdesk to be current on payment of outstanding invoices, which it was at that time. Talkdesk provided such notice on September 18, 2020. However, Engineer responded by issuing additional invoices not pursuant to the agreed contractual schedule on the 4th of the month in an effort to make it impossible to have paid all outstanding invoices. Engineer breached the contract by issuing untimely invoices and by refusing to accept a valid notice of termination.

49.     Having materially satisfied its obligations under the Section 9.1 termination clause, Talkdesk ceased using Engineer's AWS billing services and transferred the majority of its AWS billing accounts back to AWS on November 2, 2020, as permitted by the terms of the MSA. By the terms of the contract, Talkdesk's minor ongoing usage would no longer be subject to the discount on a going forward basis that Talkdesk had been eligible for under its higher usage.

50.     Because Engineer was required to invoice Talkdesk "based on [Talkdesk's] AWS usage costs" for Talkdesk accounts still registered with Engineer, Engineer's invoices should have dropped to substantially nothing after Talkdesk stopped using the service. And, in fact, at first, Engineer's invoices did drop with Talkdesk's usage.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 13 -

COMPLAINT
CASE NO. 3:22-CV-4515

51.     On December 4, 2020, for example, Engineer provided an invoice for Talkdesk's usage in November 2020, which totaled $36,607.

52.     On January 7, 2021, Engineer submitted an invoice for Talkdesk usage in December 2020, which totaled $11,601.

53.     After two months, however, Engineer started sending invoices that had nothing to do with Talkdesk's actual AWS usage, which, again, was almost nothing at this point.  In fact, Engineer started **increasing** the amount it was charging Talkdesk on a monthly basis despite the fact that Talkdesk had significantly **decreased** its usage.

54.     On or around January 27, 2021, Engineer sent Talkdesk an invoice ("EA/BCL2021/00139") that purported to charge Talkdesk $833,465 for a so-called "Minimum Use Obligation" from November 2020.  This was nearly $800,000 more than the amount Engineer had originally invoiced Talkdesk for November 2020 based on Talkdesk's actual AWS usage costs.  The invoice did not comply with the MSA's requirements that Engineer submit invoices by the fourth of every month based on Talkdesk' actual usage.

55.     On or around January 27, 2021, Engineer sent Talkdesk an invoice ("EA/BCL2021/00158") that purported to charge Talkdesk $926,627 for a so-called "Minimum Use Obligation" from December 2020.  This was approximately $915,000 more than the amount Engineer had originally invoiced Talkdesk for December 2020 based on Talkdesk's actual AWS usage costs.  The invoice did not comply with the MSA's requirements that Engineer submit invoices by the fourth of every month based on Talkdesk's actual usage.

56.     On or around February 4, 2021, Engineer sent Talkdesk an invoice ("EA/BCL2021/00185") in the amount of $986,864 for a so-called "Minimum Use Obligation" from January 2021.  On information and belief, Talkdesk's actual AWS usage costs for January 2021 were substantially nothing (*i.e.*, no more than $12,000). The invoice did not comply with the MSA's requirements that Engineer submit invoices by the fourth of every month based on Talkdesk's actual usage.

57.     On or around March 4, 2021, Engineer sent Talkdesk an invoice ("EA/BCL2021/00214") in the amount of $1,051,456 for "Cloud One MMR" services from

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 14 -

COMPLAINT
CASE NO. 3:22-CV-4515

February 2021. However, Talkdesk did not purchase any services from Engineer in February 2021. Upon information and belief, this was another invoice for the so-called "Minimum Use Obligation." On information and belief, Talkdesk's actual AWS usage costs for February 2021 were substantially nothing (*i.e.*, no more than $12,000). The invoice did not comply with the MSA's requirement that Engineer invoice Talkdesk based on Talkdesk's actual usage.

58.     The 12-month original term of the Engineer MSA ended on March 3, 2021 and Talkdesk did not renew.

## The Conspiracy Between Engineer and Pham

59.     After being fired by Talkdesk in July 2020, Pham started looking for and implementing ways to extort compensation from Talkdesk under threats of exposing Talkdesk protected information that he learned as a result of his role as Talkdesk's attorney.  One of the ways Pham sought to further his scheme was to partner with Engineer to threaten to reveal protected Talkdesk information in Pham's possession by laundering it through an Engineer breach of contract claim. Pham also agreed to actually provide legal assistance to Engineer in bringing a breach of contract claim and related claims on the MSA in direct and intentional conflict with Pham's known fiduciary and contractual obligations to Talkdesk as his former client.

60.     On information and belief, Pham told Engineer he could provide it with information about how to prevail in its dispute with Talkdesk, and Engineer agreed to accept Pham's help.  On information and belief, Engineer accepted Pham's help despite knowing that Pham was legally, contractually, and ethically obligated not to assist Engineer in bringing claims against Talkdesk for work Pham personally participated in as Talkdesk's lawyer,

61.     By April 2021, Pham and Engineer appear to have conspired to use protected Talkdesk information to threaten Talkdesk with a lawsuit regarding the MSA between Engineer and Talkdesk (i.e., the contract that Pham negotiated on behalf of Talkdesk while he was acting as an attorney for Talkdesk), including by outright naming Pham in a demand letter sent to Talkdesk on behalf of Engineer.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 15 -

COMPLAINT
CASE NO. 3:22-CV-4515

62.     Specifically, on April 27, 2021, Engineer sent a threatening and extortionary letter to Talkdesk through its then-counsel Sheppard Mullin.  In the letter, Engineer demanded that Talkdesk pay Engineer nearly $4.5 million.  Engineer expressly referenced Pham in the letter, commenting that Pham has signed the MSA on behalf of Talkdesk, and noting that Pham had received "numerous proposals" that would show Engineer's "pricing calculations" and would support Engineer's claims.  Engineer also included false claims for unpaid invoices for "minimum usage" and interest that were nowhere supported by the language of the MSA.  Given the curious references to Pham and the information contained in the letter, on information and belief, Pham was involved in the strategy for the letter, supplied information for the letter, and/or drafted portions of the letter.

63.     On May 14, 2021, Talkdesk's outside lawyers had a telephone conference with lawyers from Sheppard Mullin for Engineer.  Talkdesk requested an accounting and explanation of the $4.5 million demand and, specifically, the amounts that Engineer was purporting to charge Talkdesk.  Even though they had ostensibly written the letter and studied the issues, the Sheppard Mullin lawyers could not explain any contractual basis for the made-up invoices and interest demanded. To their credit, the Sheppard Mullin lawyers agreed to obtain that information from their client, Engineer. However, neither Engineer nor the Sheppard Mullin lawyers nor anyone else ever followed-up with the promised information. Eventually the Sheppard Mullin lawyers just stopped responding to Talkdesk's inquires for a follow-up discussion.

64.     Over the summer and fall of 2021, Talkdesk became aware that Pham was contacting Talkdesk employees and vendors about potential claims they might have against Talkdesk.  Talkdesk retained outside counsel to send a December 8, 2021 letter to Pham reminding him of his contractual, legal, fiduciary, and ethical obligations to Talkdesk, demanding that he cease and desist from further contacting current and former vendors and employees about matters adverse to Talkdesk's interests, and requiring that he write back to confirm his intent to abide his fiduciary and contractual duties to Talkdesk.

65.     On December 18, 2021, Pham, through outside counsel Stephen Lobbin of the SML Avvocati firm, responded to Talkdesk's letter.  He refused to abide by his preexisting and

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 16 -

COMPLAINT
CASE NO. 3:22-CV-4515

1   ongoing legal, ethical, contractual, and fiduciary "obligations to Talkdesk" unless Talkdesk (1)

2   paid Pham some $680,000 in unearned compensation and (2) vested and exercised additional

3   stock options, valued at more than $4,000,000. Neither of these amounts was owed to Pham and,

4   in fact, Pham did not allege in the letter that he was actually owed any money except for the

5   (incorrect) assertion that he was owed an $80,000 discretionary bonus that he claimed had been

6   "wrongfully withheld."

7       66.     The letter stated that Pham claimed to be aware of various broad categories of

8   internal malfeasance at Talkdesk (while providing no facts to support any such claims) and

9   warned that he would not want to see a potential Talkdesk initial public offering fail on account

10  of Pham bringing forth such claims. Instead, Pham suggested that the parties might enter a non-

11  disclosure agreement as part of Talkdesk delivering approximately $5 million in cash and stock

12  that Pham wanted as hush money. In conditioning his agreement to abide by his attorney

13  obligations to Talkdesk that were already owed on a multi-million-dollar payout from Talkdesk,

14  Pham made an extortive demand.

15      67.     The December 18, 2021 letter is intentionally written by implying threats without

16  outright stating them, nevertheless in sending it, Pham crossed the line into extortion. Pham's

17  letter suggested that (1) Talkdesk could buy Pham's silence on a string of serious claims that

18  Pham listed, implying that he had information to support such claims due to his role as Talkdesk's

19  putative attorney and (2) that Pham may publicly disclose such claims and other protected

20  information unless Talkdesk paid him the approximately five million dollars in unearned

21  compensation and stock he demanded. Pham's letter closed by remarking that Pham "looked

22  forward to discussing the parties shared goals, including the successful IPO of Talkdesk for the

23  benefit of its employees and shareholders," which Talkdesk understood to be an overt threat that

24  Pham would go public with false claims at a time that would be calculated to adversely impact the

25  company.

26      68.     The assertions in Pham's December 18, 2021 letter are false. Pham is not owed any

27  unpaid compensation, stock, bonuses, or other benefits by Talkdesk, which Pham himself knows as

28  he does not actually state that Talkdesk is legally responsible for such unearned sums. Pham has

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 17 -

COMPLAINT
CASE NO. 3:22-CV-4515

1    admitted that he has no valid claims against Talkdesk in pending litigation against his other former

2    employer, Verint.

3        69.    Pham's December 2021 letter further misrepresents that Talkdesk is liable for some

4    nine serious categories of claims. Yet Pham's letter provides no factual support or explanation

5    whatsoever for any of the putative claims he lists. Moreover, in threatening to take public claims

6    that Pham could have only learned of while serving as Talkdesk's attorney, he violated his attorney

7    fiduciary and contractual obligations to Talkdesk in addition to exceeding the bounds of decency

8    and ethics.

9        70.    Pham, on information and belief, understands that this very act of identifying a

10   series of potential claims against Talkdesk implies that he has information to support such claims

11   due to his prior work as Talkdesk's putative lawyer. As such, Pham intentionally and misleadingly

12   implies that he will misuse Talkdesk's protected information that he learned as its attorney and the

13   trust and confidence that Talkdesk reposed in him as its attorney, in an effort to extort Talkdesk for

14   unearned sums.

15       71.    Indeed, in his December 2021 letter, Pham does not explain how he could even

16   bring any of the categories of claims he listed as he does have standing to do so. As such, he is

17   implicitly threatening to represent former and current employees in litigation against Talkdesk even

18   though Pham was Talkdesk's own lawyer. Pham's letter also makes intentionally broad, defamatory

19   accusations designed to cause Talkdesk to actually fear that Pham would follow through on the

20   threats made in his letter if Talkdesk did not agree to pay Pham off.  And Talkdesk did reasonably

21   believe that Pham would follow through on his extortionary threats and Pham did actually follow

22   through by working with Engineer to sue Talkdesk.

23       72.    Pham began providing legal advice to Engineer and disclosing to Engineer

24   Talkdesk protected information that Pham learned as Talkdesk's attorney shortly after Pham was

25   fired at Talkdesk.  Engineer hired Pham as its top in-house lawyer with the title of "General

26   Counsel" at Engineer beginning sometime between September 2021 and January 2022 and has

27   maintained that title since that time. On information and belief, among performing other attorney

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 18 -

COMPLAINT
CASE NO. 3:22-CV-4515

tasks at Engineer, Pham supervises and sets strategy for litigation, including specifically for the lawsuit that Engineer filed against Talkdesk.

73.     Pham publicly states that he works in the "San Francisco Bay Area" "full-time" as Engineer's General Counsel on his LinkedIn profile. The profile features a picture of Pham. Pham states that "As a critical member of the executive team, I am building and leading a global legal team (US, UK, and India), and influencing strategic business decisions."

74.     On April 14, 2022, Pham's personal attorney (Stephen Lobbin) filed a lawsuit, case number 2:22-cv-02510, against Talkdesk in the Central District of California ("the First Engineer Lawsuit") on behalf of two foreign Engineer-related entities (Engineer.ai Global Limited and Engineer.ai India Private Limited).  In that lawsuit, the Engineer entities asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing based on the MSA. Notably, the Engineer defendant in the present case, Engineer.ai Corp., was not named as a party to the First Engineer Lawsuit.

75.      The Engineer complaint included allegations that, on information and belief, were provided to Engineer by Pham.  For example, the complaint alleges that the Engineer MSA "sav[ed] Talkdesk hundreds of thousands" in fees annually, which, to the extent it is true, constitutes protected Talkdesk information that Pham had access to in his role as Talkdesk's attorney in negotiating the MSA with Engineer.  The First Engineer Complaint also included a slew of derogatory allegations about Talkdesk that had no connection to its breach of contract claims but closely echoed the broad allegations Mr. Pham purported to have learned about Talkdesk in his extortionate December 18 letter.

76.     On April 15, 2022, Talkdesk received a letter on behalf of Engineer from Stephen Lobbin at SML Avvocati (the same attorney who had previously sent the December 18, 2021 extortionary letter on behalf of Pham personally).  The April 15 letter copied Andy Pham, who was identified as Engineer's General Counsel.  The letter also copied Sachin Dev Duggal, identified as Engineer's "Chief Wizard" and "Co-Founder," and Joe Norena, identified as Engineer's "Chief Operating Officer."  Lobbin stated that Engineer did not intend to serve Talkdesk with the complaint it had filed the day prior.  Instead, Engineer threatened to file a

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 19 -

COMPLAINT
CASE NO. 3:22-CV-4515

second, "amended" complaint, which was attached to the letter, on May 2, 2022 if Talkdesk did not agree to pay Engineer nearly $6.7 million by then.

77.     Engineer's April 15 letter included statements that discussed protected Talkdesk information which, on information and belief, Pham disclosed to Engineer in direct conflict of his prior representation of Talkdesk on the MSA.  For example, the letter recites the amount of savings Talkdesk supposedly achieved due to the Engineer MSA (information Engineer would have had no legitimate basis to or source for knowing).  The letter also ascribes a plot by Talkdesk's CEO related to a COVID policy he had supposedly set.  Of those involved in the litigation, only Pham could have provided information about an internal Talkdesk COVID program – Engineer would have had no reason to have such information or legitimate source for obtaining such information.

78.      Pham invented, suggested, and/or wrote the derogatory allegations in the April 15 letter as part of his and Engineer's larger scheme to coerce Talkdesk into making a payment or payments out of fear of disclosures rather than because Talkdesk actually owed such payments to either Pham or Engineer.

79.     The April 15 letter also attached a draft amended complaint, which Engineer explained it intended to file in lieu of the already filed April 13 complaint if Talkdesk had not paid the shakedown demand by May 2, 2022.  The April 15 letter listed discovery abuses and additional defamatory allegations it intended to make (and which were included in the draft amended complaint provided with the letter) if Engineer's threats were not satisfied.  These facts, taken as a whole, show that Engineer filed the First Engineer Complaint in bad faith.

80.     On May 10, 2022, Talkdesk rejected Engineer's extortionate demands and warned Mr. Lobbin that he and his clients were continuing to cross the line into potential criminal behavior.  Talkdesk also told Engineer that the First Engineer Complaint was defective due to containing obviously false jurisdictional allegations and omitting a necessary party (Engineer.ai

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 20 -

COMPLAINT
CASE NO. 3:22-CV-4515

1    Corp). Talkdesk maintained that the First Engineer Complaint was made in bad faith as part of

2    Engineer and Pham's broader extortionary scheme and must stop.[2]

3         81.    Engineer never served the First Engineer Complaint on Talkdesk and instead

4    dismissed it on April 25, 2022.

5         82.    On July 29, 2022, Lobbin emailed counsel for Talkdesk with a copy of a new

6    Complaint (the "Second Engineer Complaint") that Mr. Lobbin had filed on behalf of Engineer

7    against Talkdesk in the Superior Court of California for the County of Los Angeles. This

8    complaint (which was filed on July 8, 2022) included even more outlandish and irrelevant

9    allegations, including allegations that personally targeted Talkdesk's CEO and other high-level

10   employees. Based on the nature of the allegations it was evident that Mr. Pham had disclosed

11   protected Talkdesk information to Engineer and/or Lobbin for purposes of preparing the pleading.

12        83.    Pham and Engineer's unlawful misuse of Talkdesk protected information that

13   Pham purports to know as a result of having served as Talkdesk's attorney has caused and

14   continues to cause substantial harm to Talkdesk. Pham has shown a total disregard for his ethical

15   obligations to Talkdesk as an attorney. Engineer, who knows that Pham is acting in disregard of

16   his fiduciary and contractual obligations to Talkdesk as its former counsel, has likewise shown no

17   concern for abiding the law without court intervention. Talkdesk thus seeks injunctive and

18   monetary relief to stop the irreparable ongoing harm it is suffering and make it whole as much as

19   is possible.

20   **FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

21   **(Against Pham)**

22        84.    Talkdesk incorporates and realleges paragraphs 1-83 as if fully set forth herein.

23        85.    Talkdesk and Pham are parties to valid, existing employment contracts: including

24   the Pham Agreement and the PIIA.

25   ───────────────

26   [2] The C.D. Cal. Court had also picked-up on Engineer's suspicious jurisdictional allegations in the First Engineer Complaint and on April 15, 2022 issued an order to show cause why the case should not be dismissed for lack of jurisdiction and improper venue. The Court also concluded in that OSC that Engineer.ai Corp. should have been named as the plaintiff and that venue was

27   properly in San Francisco, California. Engineer dismissed the case without prejudice on April 25, 2022.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 21 -

COMPLAINT
CASE NO. 3:22-CV-4515

86.     Talkdesk has substantially performed its material obligations under the Pham Agreement and PIIA.

87.     Pham has materially breached his obligations under both the Pham Agreement and the PIIA, by making unauthorized disclosures and/or use of Talkdesk's protected client information and representing parties adverse to Talkdesk on matters for which he provided Talkdesk legal counsel.  For example, Pham has disclosed protected Talkdesk client information about the MSA and its negotiation to Engineering.

88.     Pham has also breached the Pham Agreement by materially misrepresenting his qualifications to perform the job described in the Pham Agreement and by materially omitting adverse information about at least one prior bar license suspensions and allegations from his former employer that Pham was not registered to practice as in-house counsel in California for Talkdesk.

89.     Pham's breaches proximately caused Talkdesk foreseeable monetary harm in an amount to be proven at trial but at least requiring disgorgement and return of all compensation unlawfully received by Pham as a result of not being qualified for the Talkdesk in-house counsel job he was paid for and for cancellation or return of all stock options Pham received for same. Talkdesk has also incurred damages in responding to the use of the confidential information Pham has used and disclosed.

90.     Pham continues to flout his obligations under the Pham Agreement and PIIA, and those breaches have proximately caused and will continue to cause Talkdesk irreparable harm that can only be remedied by an order of specific performance and injunctive relief.

**SECOND CAUSE OF ACTION – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Against Pham)**

91.     Talkdesk incorporates and realleges paragraphs 1-83 as if fully set forth herein.

92.     Talkdesk and Pham are parties to valid, existing employment contracts: the Pham Agreement and the PIIA.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 22 -

COMPLAINT
CASE NO. 3:22-CV-4515

4142-9890-3612

93.     California law recognizes the implied covenant of good faith and fair dealing as an integral part of every contract, which imposes upon each party a duty not to engage in conduct that frustrates the other party's rights to the benefits of the agreement.

94.     Talkdesk satisfied all of its obligations under the Pham Agreement and PIIA by employing Pham on an at-will basis and compensating him consistent with those contracts.

95.     Per the terms of the agreements, Pham was required to protect Talkdesk's confidential information, both during and after employment.

96.     Pham did not act in good faith and breached his confidentiality obligations to Talkdesk multiple times. For example, Pham disclosed and otherwise used privileged and confidential information he learned during his employment at Talkdesk to aid others adverse to Talkdesk.

97.     By failing to act in good faith, Pham unfairly interfered with Talkdesk's rights to receive the benefit of the agreements, namely protection for its confidential information.

98.     Pham's breaches have proximately caused Talkdesk monetary harm in an amount to be determined at trial but at least requiring disgorgement and return of all compensation unlawfully received by Pham as a result of breaching his confidentiality obligations to Talkdesk and for cancellation or return of all stock options Pham received for same.

99.     Pham continues to flout his confidentiality obligations under the Pham Agreement and PIIA, and those breaches have proximately caused and will continue to cause Talkdesk irreparable harm that can only be remedied by an order of specific performance and injunctive relief.

**THIRD CAUSE OF ACTION – BREACH OF FIDUCIARY DUTIES**

**(Against Pham)**

100.    Talkdesk reincorporates and realleges paragraphs 1-83 above as if fully set forth herein.

101.    During his employment with Talkdesk, Pham represented himself as lawyer and agent for Talkdesk. Talkdesk reasonably believed that Pham was an attorney qualified and

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 23 -

COMPLAINT
CASE NO. 3:22-CV-4515

1    registered to practice as an in-house lawyer in California and that he was lawfully acting as an

2    attorney and agent on Talkdesk's behalf.

3        102.    Because Pham served as Talkdesk's most senior in-house attorney at the time,

4    Pham had substantial access to Talkdesk's most sensitive, confidential, and proprietary

5    information.

6        103.    Talkdesk trusted Pham to act faithfully and loyally for Talkdesk's benefit, and

7    Pham acknowledged and accepted this trust and confidence though he failed to abide it.

8        104.    On information and belief, Pham continuously resided in California while he was

9    employed by Talkdesk.  During this period, he performed legal services for Talkdesk. During this

10    period, Talkdesk maintained offices in San Francisco, California (where Pham regularly worked

11    during his employment at Talkdesk), and Talkdesk had more than five employees. Because Pham

12    was in fact a licensed lawyer with the Wisconsin State Bar and had practiced as an in-house

13    lawyer in California for some 12 years, Pham was in a superior position to know and understand

14    the requirements to practice as an in-house attorney in California, and Talkdesk reasonably relied

15    on Pham to comply with all requirements pertaining to work as in-house counsel for Talkdesk,

16    which Talkdesk reasonably believed and relied on in hiring Pham as its in-house counsel in

17    California in 2019.

18        105.    Pham owed and continues to owe Talkdesk fiduciary duties as its once and former

19    lawyer, including, among others, duties of loyalty, confidentiality, and care. Pham's duty of

20    loyalty is reflected in, among other places, California Rules of Professional Conduct 1.7, 1.8, and

21    1.9, and Wisconsin Rules of Professional Conduct 1.6, 1.7, and 1.9.  Pham's duty of

22    confidentiality is reflected in, among other places, California Business and Professions Code

23    Section 6068(e)(1) and 6533, California Rules of Professional Conduct 1.4, 1.6, and 1.9, and

24    Wisconsin Rules of Professional Conduct 1.4, 1.6, and 1.9. Pham's duty of care is reflected in,

25    among other places, California Rules of Professional Conduct 1.1 and 1.4 and Wisconsin Rules of

26    Professional Conduct 1.1 and 1.4. These same duties are reflected in, among other places, 37

27    C.F.R. Sections 11.101; 11.104, 11.106, and 11.109.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 24 -

COMPLAINT
CASE NO. 3:22-CV-4515

106.    Pham has breached his duty of confidentiality by communicating protected and confidential information to Engineer and Lobbin.

107.    Pham has breached his duty of loyalty by advising and directing Engineer regarding claims for breach of contract that pertain to a contract between Talkdesk and Engineer that Pham personally negotiated and drafted on behalf of Talkdesk while employed as its attorney, and that he represented Talkdesk on in the early days of the dispute.

108.    On information and belief, Pham has also breached his duty of confidentiality by using information he obtained as Talkdesk's in-house counsel to secure his employment at Engineer.

109.    On information and belief, Pham has breached his duty of confidentiality and loyalty by using information he had access to as a result of being Talkdesk's putative in-house counsel in contacting current and/or former Talkdesk employees and advising that they may have legal claims against Talkdesk.

110.    Pham has violated and continues to violate his duties of loyalty and confidentiality by using and conspiring with Engineer to use Talkdesk's protected client information in an attempt to threaten and extort Talkdesk into paying Pham and Engineer monies they are not owed. On information and belief, Pham is using Talkdesk's protected information in a manner that is adverse to Talkdesk and in violation of his duty of loyalty, in an effort to extort money for both himself and for Engineer.

111.    As a direct and proximate cause of Pham's breaches of these duties, Talkdesk has suffered and continues to suffer damages. For example, Talkdesk has expended significant resources, both time and money, investigating and responding to extortionary requests that are based on Pham's knowledge of Talkdesk protected information.

112.    Talkdesk has also suffered damage in the payment of salary and stock options actually paid to Pham. Had Talkdesk been aware that Pham was not authorized to practice law in California as its in-house attorney, Talkdesk would not have paid Pham this compensation, and would not have continued to employ him, especially in a position of trust and confidence. Pham fraudulently concealed material information about his lack of authorization to practice as an in-

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 25 -

COMPLAINT
CASE NO. 3:22-CV-4515

house lawyer in California and prior disciplinary actions and suspensions that he was obligated to disclose to Talkdesk owing to his position of trust and confidence to them as a putative attorney.

113.    Talkdesk has also suffered damage in the form of attorneys' fees costs responding to the extortionary threats that Pham improperly assisted Engineer in bringing in violation of his fiduciary obligations to Talkdesk.

114.    Pham's ongoing breaches of his fiduciary obligations to Talkdesk as his former employer and client have caused and will continue to cause Talkdesk irreparable harm for which monetary damages may not be adequate unless and until Pham is enjoined from further using his former position as Talkdesk's most senior in-house counsel and disclosing information he actually learned or purports to have learned as Talkdesk's in-house attorney.

115.    Additionally, because Pham's conduct was willful, malicious, oppressive, fraudulent and done with a conscious disregard for Talkdesk's rights and interests, as defined in Civil Code Section 3294, punitive damages should be awarded against Pham to punish and deter future misconduct.

## FOURTH CAUSE OF ACTION – UNJUST ENRICHMENT

### (Against Pham)

116.    Talkdesk reincorporates and realleges paragraphs 1-83 above as if fully set forth herein.

117.    Pham misrepresented his qualifications when applying for and holding the position of SVP, Business and Counsel at Talkdesk. For example, Pham did not disclose that he was not licensed or registered to practice law in California. Pham also did not disclose that his Wisconsin license was suspended from approximately 2009-2014 and that he continued to practice law during that while with employed by Verint. Pham did not disclose that the PTO disciplined him for practicing law while his license was suspended.

118.    Had Talkdesk been aware of these facts, it would not have employed Pham.

119.    Pham received the benefit of his compensation, including cash and stock options, as a result of his misrepresentations about his qualifications.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 26 -

COMPLAINT
CASE NO. 3:22-CV-4515

4142-9890-3612

120.    Pham unjustly retained the benefit of his compensation, including cash and stock options.

121.    As a result, Talkdesk has been injured in the amount of compensation paid to Pham when he was employed as SVP, Business and Counsel despite not in fact being qualified to hold such position.

### FIFTH CAUSE OF ACTION – FRAUDULENT MISREPRESENTATION

### (Against Pham)

122.    Talkdesk incorporates and realleges paragraphs 1-83 as if fully set forth herein.

123.    Both as a candidate for the position of General Counsel and as SVP, Business and Counsel for Talkdesk, Pham represented that he was qualified to practice as in-house counsel in the state of California even though he was not licensed to practice in California.  Pham had a responsibility as an attorney to know what the requirements were to practice in California when not barred in California.  Pham intentionally misrepresented that he was qualified to practice as in-house counsel in California and/or intentionally omitted that he was not qualified to practice as in-house counsel in California.  Among other things, Mr. Pham noted on his resume that he had been practicing as in-house counsel in California already for some 12 years and stated in his interview that he lived and resided continuously in California during that period, specifically in Modesto.  Mr. Pham also represented that he had worked in Santa Clara for his prior job, further suggesting that he was, in fact, permitted to practice in California when, in fact, he was not.

124.    In applying for the in-house position at Talkdesk and in interviews for same, Pham misrepresented or intentionally omitted that he was neither licensed nor registered to practice law in the state of California.

125.    Pursuant to CRC 9.46, all attorneys who are licensed out of state but wish to practice law in California must qualify first under relevant provisions.  In order to practice as in-house counsel in California, CRC 9.46 further requires the attorney to register with the State Bar of California, including completing a Moral Character Exam and being approved by the Bar on

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY
4142-9890-3612

- 27 -

COMPLAINT
CASE NO. 3:22-CV-4515

the issue of moral fitness.  On information and belief, Pham has never completed the process for obtaining moral character approval in California.

126.    The information about Pham's failure to comply with the rules of professional practice that would enable him to practice law in the state of California bear directly on his ability and fitness to perform as in-house counsel at Talkdesk.

127.    Pham had actual knowledge of the fact that he was neither licensed nor registered to practice law in the state of California. Nevertheless, Pham deliberately omitted the fact that he was not licensed or registered to practice as in-house counsel in California from Talkdesk and, when confronted in April 2020 about allegations from his former employer, Verint, that he was not licensed or registered to practice law in California, Pham lied and claimed that Verint was misrepresenting his qualifications due to pending litigation.

128.    Pham, in deliberately misrepresenting and intentionally omitting material information about his qualifications and fitness to practice law in California, intended to induce Talkdesk hire Pham as counsel.

129.    Talkdesk reasonably relied to its detriment on Pham's misrepresentations and omissions. Talkdesk was unaware that Pham was neither licensed nor registered to practice law in California nor was Talkdesk aware of Pham's extensive disciplinary record. Talkdesk would not have hired Pham for any position had it known of the information Pham withheld.

130.    Talkdesk's reliance on Pham's misrepresentations and omissions were justifiable in that Talkdesk had no actual or presumptive knowledge of facts sufficient to put Talkdesk on inquiry. To the contrary, Talkdesk knew that Pham had practiced law for another California company for some 12 years because another Talkdesk employee had worked at Verint with Pham.

131.    Pham's misrepresentations and omissions, inducing Talkdesk's reliance thereon, were the direct and proximate cause of Talkdesk's loss, which Talkdesk would not have sustained but for Pham's fraud.

132.    As a result of Pham's fraud, Talkdesk is entitled to an award of damages, inclusive of all compensation received by Pham from Talkdesk, including the return of stock that was issued upon the exercise of options, paid to Pham, in an exact amount to be proved at trial.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 28 -

COMPLAINT
CASE NO. 3:22-CV-4515

133.     Additionally, Talkdesk is entitled to punitive damages as a result of Pham's fraudulent conduct. Specifically, Pham fraudulently obtained his position as counsel at Talkdesk by intentional misrepresentation and deceit in order to have the stature and compensation afforded such a position – a position for which he was not qualified.

### SIXTH CAUSE OF ACTION – FRAUDULENT CONCEALMENT

### (Against Pham)

134.     Talkdesk incorporates and realleges paragraphs 1-83 as if fully set forth herein.

135.     Both as a candidate for the position of in-house counsel and as counsel for Talkdesk, Pham failed to disclose material information about his qualifications and fitness to practice law. Specifically, Pham represented himself on his resume as having served as Associate General Counsel at Verint for at least 12 years in California, but intentionally omitted that he had never registered with the State Bar of California. He also provided a Modesto, California address as his contact address and requested to work in Talkdesk's San Francisco office three days a week and at home in Modesto two days a week.

136.     Pham concealed and/or failed to disclose that (1) he was neither licensed nor registered to practice law in the state of California, (2) from approximately 2009-2014, Pham's license to practice law in Wisconsin was suspended yet he continued to work for his former employer, Verint, in California during this time period as in-house counsel, and (3) on February 25, 2015 the U.S. PTO disciplined Pham and put him on 36 months of probation for, among other things, representing himself as an "Associate Counsel" on documents for his ex-wife's company even though he did not hold that position and, in fact, his license was suspended at this time.

137.     The information about Pham's failure to comply with the rules of professional practice that would enable him to practice law in the state of California as well as his disciplinary record was material to him obtaining a position as in-house counsel at Talkdesk in that it bore directly on his ability and fitness to perform as a lawyer in California.

138.     Pham and Talkdesk had an attorney-client relationship once Pham accepted the job offer for in-house counsel.  Having done so, Pham owed Talkdesk fiduciary duties and was obligated to disclose complete and accurate information about his compliance with professional

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 29 -

COMPLAINT
CASE NO. 3:22-CV-4515

licensing obligations and also to disclose his disciplinary record. Furthermore, Pham had a duty to disclose complete and accurate information about his compliance with local rules of professional practice as well as his disciplinary record, because he conveyed partial information to Talkdesk when applying for the job of in-house counsel. This partial information was misleading, because it portrayed Pham as an attorney in good standing, thereby giving rise to his duty to correct this misimpression by providing complete and accurate information.

139.    Pham had actual knowledge of the fact that (1) he was neither licensed nor registered to practice law in the state of California, (2) from approximately 2009-2014, Pham's license to practice law in Wisconsin was revoked and he continued to work for his former employer, Verint, during this time period representing Verint as an attorney, and (3) on February 25, 2015 the U.S.P.T.O disciplined Pham and put him on 36 months of probation for, among other things, representing himself as an "Associate Counsel" on certain documents during the time when his license was suspended. Nevertheless, Pham deliberately concealed and/or failed to disclose said information to Talkdesk.

140.    Pham, in deliberately concealing and/or failing to disclose said information, intended to induce Talkdesk into hiring and continuing to employ Pham as in-house counsel.

141.    Talkdesk relied to its detriment on Pham's misrepresentations. Talkdesk was unaware that Pham was neither licensed nor registered to practice law in California nor was Talkdesk aware of Pham's disciplinary record. Talkdesk would have acted differently had it known of this information in that Talkdesk would not hired or continued to employ Pham as in-house counsel.

142.    Talkdesk's reliance on Pham's omissions were justifiable in that Talkdesk had no actual or presumptive knowledge of facts sufficient to put Talkdesk on inquiry until late April 2020, when it received notice of the Verint litigation claims.  At this point Pham continued to misrepresent his qualification to Talkdesk.

143.    Pham's misleading omissions, inducing Talkdesk's reliance thereon, was the direct and proximate cause of Talkdesk's loss, which Talkdesk would not have sustained but for Pham's fraud.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 30 -

4142-9890-3612

COMPLAINT
CASE NO. 3:22-CV-4515

144.    As a result of Pham's fraud, Talkdesk is entitled to an award of damages, inclusive of all compensation, including the return of stock that was issued upon the exercise of options, paid to Pham, in an exact amount to be proved at trial.

145.    Additionally, Talkdesk is entitled to punitive damages as a result of Pham's fraudulent conduct. Specifically, Pham fraudulently obtained his position as counsel in order to further his scheme to obtain privileged and confidential information and then use that information to extort additional cash payments from Talkdesk.

## SEVENTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

### (Against Pham)

146.    Talkdesk incorporates and realleges paragraphs 1-83 as if fully set forth herein.

147.    Both as a candidate for the position of General Counsel and in accepting and performing his role as SVP, Business and Counsel for Talkdesk, Pham materially misrepresented himself to Talkdesk as a licensed attorney who was qualified to practice law in California, as the in-house position he applied for and obtained at Talkdesk required.

148.    Throughout Pham's tenure as in-house counsel at Talkdesk from June 2019 through mid-April 2020, Pham actually knew or reasonably should have known that he was not authorized to practice law as in-house counsel in California at Talkdesk. As an attorney only licensed out of state, Pham was obligated to comply with the California Rules of Professional Conduct and other rules applicable to the practice of law in California *before* undertaking the practice of law in California.

149.    From on or around April 17, 2020 through July 2020, Pham was on actual notice that he was not authorized to practice law as in-house counsel in California.  His former employer, Verint, had filed a cross-complaint against Pham alleging that Pham was not authorized to practice law in California at any point during his over 12 years at Verint.  Verint further alleged that Pham's license to practice in Wisconsin was actually suspended from 2009-2014, making Pham ineligible to practice in *any* jurisdiction in the United States at that time. Pham was confronted about Verint's allegations in April 2020 when Talkdesk learned of them

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 31 -

COMPLAINT
CASE NO. 3:22-CV-4515

1    and, rather than come clean, Pham further materially misrepresented to Talkdesk that Verint's

2    allegations were false and that he was absolutely authorized to practice law in-house in California

3    for Talkdesk.

4        150.    At all relevant times when interviewing for, accepting, and performing the in-

5    house counsel role at Talkdesk, Pham knew that he was not licensed by or otherwise authorized to

6    practice law in California and instead knew that he was only licensed to practice law by the State

7    of Wisconsin.  Further, Pham knew that the only license to practice law that he did have (from

8    Wisconsin) had been suspended from 2009-2014, but he continued to practice law in California

9    throughout that period anyway.

10        151.    As a lawyer who was not admitted or registered to practice law in California,

11    Pham knew or reasonably should have known, including at least pursuant to California Rule of

12    Professional Conduct 5.5(b)(1), that he was prohibited from ". . . maintain[ing] a resident office

13    or other systematic or continuous presence in California for the practice of law" unless he had

14    complied with one of the exceptions pursuant to California Rules of Court, Rules 9.40-9.48.

15    Pham had not complied with any of those exceptions prior to interviewing for, obtaining, and

16    performing the in-house counsel role at Talkdesk.

17        152.    By at least April 17, 2020, through Verint's cross-complaint, Pham was on actual

18    notice of California's requirements for the practice of law by an attorney not licensed in

19    California, including that he had not complied with any of the exceptions that would allow him to

20    lawfully practice as in-house counsel in California with an out of state license.

21        153.    At all relevant times, Talkdesk reasonably relied on Pham's material

22    misrepresentations that he was qualified to perform the in-house counsel role for which he

23    interviewed, accepted, and performed.  Talkdesk reasonably relied on Pham who, as a graduate of

24    Marquette University, licensed member of at State Bar of Wisconsin, and practicing attorney in

25    California, had professional and ethical obligations to ensure his own compliance with all

26    relevant licensing requirements necessary to practice law as in-house counsel at Talkdesk in

27    California *before* applying for such a position. Talkdesk also considered Pham's approximately

28    12-year practice of law in-house at Verint in California in reasonably relying on Pham's material

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 32 -

COMPLAINT
CASE NO. 3:22-CV-4515

1   misrepresentations about his qualifications to practice as in-house counsel at Talkdesk in

2   California.

3       154.    Talkdesk also reasonably relied on Pham's material misrepresentation that he was

4   qualified to practice law as in-house counsel in California after receiving notice of Verint's

5   allegations regarding Pham's lack of qualifications to so practice.  Pham was in active litigation

6   with Verint at the time Verint made the allegations about Pham's lack of authorization to practice.

7   Further, Pham had not been terminated by Verint (but instead, left voluntarily for Talkdesk), thus

8   it was reasonable for Talkdesk to rely on Pham's material misrepresentation when he assured

9   Talkdesk (falsely) that Verint's allegations about Pham's lack of authorization to practice in

10  California were a sham.

11      155.    But for Pham's material misrepresentations about his qualifications and authority

12  to practice law in-house at Talkdesk in California, Talkdesk would not have interviewed or

13  considered Pham for any in-house legal position. Likewise, Talkdesk would not have hired Pham

14  as its in-house counsel but for Pham's material misrepresentations about his qualifications and

15  authority to practice law in California.  Further, Talkdesk would not have employed Pham as in-

16  house counsel (or in any other position) had it not reasonably relied on Pham's misrepresentation

17  that he was authorized to practice law in California.  Talkdesk would not have continued to

18  employ Pham as in-house counsel following Verint's allegations that Pham was not licensed to

19  practice law in California but for Pham's further material misrepresentation that Verint's

20  allegations were untrue and that Pham was, in fact, authorized to practice in California.

21      156.    Pham's material misrepresentations about his qualifications to practice law in-

22  house at Talkdesk in California, together with the circumstances of Pham's long prior tenure as

23  in-house counsel at another California company for over a decade, induced Talkdesk's reasonable

24  reliance thereon, was a substantial factor of Talkdesk's loss, which Talkdesk would not have

25  sustained but for Pham's fraud. Talkdesk suffered harm and continues to suffer harm as a direct

26  result of Pham's misrepresentation that he was authorized to practice law in California as

27  Talkdesk's in-house counsel. This harm includes at least the full amount of compensation and

28  benefits (including stock options that Pham eventually exercised) that Pham received from

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 33 -

COMPLAINT
CASE NO. 3:22-CV-4515

Talkdesk, payments Talkdesk would not have made but for Pham's material misrepresentation that he was qualified to perform the job he was hired to do at Talkdesk.

157.    As a result of Pham's negligent misrepresentations, Talkdesk is entitled to an award of damages, inclusive of all compensation he received from Talkdesk, including the return of stock Pham received upon the exercise of options, in an exact amount to be proved at trial.

**EIGHTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

**(Against Engineer)**

158.    Talkdesk incorporates and realleges paragraphs 1-83 as if fully set forth herein.

159.    The PIIA is a valid, enforceable contract between Pham and Talkdesk.

160.    On information and belief, Engineer is and has been aware of the PIIA, including Pham's confidentiality obligations to Talkdesk pursuant to the PIIA, at all relevant times.

161.    Talkdesk confidential information that Pham received and had access to during the course of his employment at Talkdesk included, specifically, Talkdesk's strategy for and negotiations with Engineer regarding the MSA and the parties' disputes about termination and payments allegedly owed thereunder.

162.    Engineer intentionally interfered with the PIIA by soliciting and accepting information from Pham that Engineer knew to be a result of Pham's protected relationship with Talkdesk as its former in-house counsel.  Engineer further interfered with the PIIA by hiring Pham as general counsel to advise on Engineer's dispute with Talkdesk, i.e., on a matter for which Engineer knew Pham to have performed legal work on for Talkdesk. For example, Engineer induced Pham to breach the PIIA by, on information and belief, soliciting and accepting protected Talkdesk information from Pham, including confidential Talkdesk information about the MSA dispute that Pham had as a result of his attorney-client relationship with Talkdesk.

163.    On information and belief, Engineer further interfered with the PIIA by accepting (in breach of the PIIA) information about unsubstantiated claims of alleged Talkdesk wrongdoing that Pham purported to have as a result of his confidential employee and attorney-client relationship with Talkdesk.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 34 -

COMPLAINT
CASE NO. 3:22-CV-4515

164.     Engineer's interference with the PIIA caused Pham to disclose protected and confidential Talkdesk information in breach of the PIIA and in violation of Pham's obligations to Talkdesk as its former in-house attorney.

165.     Engineer's interference proximately caused harm to Talkdesk in an amount to be determined at trial, but comprising at least Talkdesk's reasonable attorney fees and costs accrued in seeking Pham's compliance with the PIIA going forward and the loss of goodwill and reputation Talkdesk has already suffered and will continue to suffer as a result of Pham's breach of the PIIA in disclosing confidential Talkdesk information to prohibited persons and entities, including, but not limited to, Engineer itself.

166.     In addition to suffering actual damages, Talkdesk has been and will continue to be irreparably harmed by Engineer's interference with the PIIA so long as Engineer is permitted to continue relying on Pham to disclose confidential Talkdesk information (including information Pham learned as a result of his attorney-client relationship with Talkdesk).  Engineer should be preliminarily and permanently enjoined from requesting, receiving, using, disclosing, and/or maintaining confidential Talkdesk information from Pham.

## NINTH CAUSE OF ACTION – BREACH OF CONTRACT

### (Against Engineer)

167.     Talkdesk reincorporates and realleges paragraphs 1-83 as if fully set forth herein.

168.     Talkdesk and Engineer entered into a valid and enforceable contract, the MSA effective March 4, 2020.

169.     Engineer admits at paragraph 22 in its draft Amended Complaint dated April 15, 2022, Talkdesk "fully performed under the MSA between February and October of 2020." Talkdesk validly terminated the MSA on September 18, 2020.

170.     Beginning in September 2020, Engineer materially breached section 9.1 of Appendix B of the MSA by refusing Talkdesk's valid termination of the MSA.

171.     Engineer further materially breached Section 4.2 of Appendix B of the MSA both by sending invoices that were not timely provided to the client by the 4th day of every month, by sending invoices that were not actually tendered on the 4th day of the month but were backdated

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 35 -

COMPLAINT
CASE NO. 3:22-CV-4515

1   to appear as if they were, and also by sending Talkdesk invoices that were not "based on the

2   Clients' AWS usage cost."

3        172.     Engineer also materially breached Section 2 of Appendix C of the MSA by

4   invoicing Talkdesk for certain unauthorized "minimum recurring rates" for at least the months of

5   November and December 2020 and January and February 2021, rather than withholding "any

6   discount offered under [the MSA] until the Client's usage exceeds the Growth Rate Target

7   again," as the contract permitted.

8        173.     Engineer materially breached Section 5 of Appendix C of the MSA by failing to

9   provide Talkdesk with a "detailed breakdown of" disputed invoices within 14 days of Talkdesk

10  making a request for that information.

11       174.     Talkdesk has suffered actual damages as a result of Engineer's breaches of the

12  MSA in an amount to be determined at trial but comprising at least the value of lost employee

13  time and company resources expended to investigate and respond to Engineer's numerous

14  breaches of the MSA.

15  **TENTH CAUSE OF ACTION – BREACH OF THE COVENANT OF GOOD FAITH AND
    FAIR DEALING**

16

17                              **(Against Engineer)**

18       175.     Talkdesk reincorporates and realleges paragraphs 1-83 as if fully set forth herein.

19       176.     Engineer and Talkdesk entered into a contract, the MSA, on March 4, 2020.

20       177.     Talkdesk did all or substantially all of the things it was required to do under the

21  terms of the MSA and/or was excused from performing its obligations following Engineer's

22  material breaches of the contract.

23       178.     Engineer prevented Talkdesk from receiving the benefits of the MSA by, among

24  other things, refusing to acknowledge Talkdesk's valid termination of the MSA and charging

25  Talkdesk unauthorized and un-incurred "minimum recurring rates" for at least the months of at

26  least November and December 2020 and January and February 2021.  Engineer also failed to

27  provide Talkdesk with a timely accounting of its charges upon request, as required by the

28  contract.  Engineer further failed to invoice Talkdesk for its actual AWS usage cost in breach of

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 36 -

COMPLAINT
CASE NO. 3:22-CV-4515

1   the contract. Engineer also revoked the discount it had given Talkdesk on outstanding invoices
2   even though the contract only permitted Engineer to revoke the discount on a going forward basis
3   at its discretion.  Engineer invoiced Talkdesk for "interest" that was not incurred and at usurious
4   rates that are not supported by the contract or the parties' prior course of conduct.
5          179.    By doing any or all of the foregoing, Engineer did not act fairly or in good faith.
6          180.    Talkdesk has suffered actual damages as a result of Engineer's lack of good faith
7   and fair dealing in an amount to be determined at trial but comprising at least the value of lost
8   employee time and company resources expended to identify, respond to, and investigate
9   Engineer's numerous breaches of the MSA.
10               **ELEVENTH CAUSE OF ACTION – ATTEMPTED EXTORTION**
11                              **(Against All Defendants)**
12         181.    Talkdesk reincorporates and realleges paragraphs 1-83 above as if fully set forth
13  herein.
14         182.    Beginning in December 2021, Pham and Engineer sent a series of written
15  correspondence to Talkdesk through their mutual attorney, Lobbin.
16         183.    This correspondence threatened that Defendants would publicly disclose protected
17  Talkdesk information that Pham knew or purported to know as a result of serving as Talkdesk's
18  attorney. Defendants also threatened to accuse Talkdesk of malfeasance that Talkdesk had not
19  committed unless Talkdesk would pay Defendants off to "keep quiet." Defendants also threatened
20  to time their smear campaign to ruin Talkdesk's anticipated initial public offering if Talkdesk
21  would not play ball.
22         184.    Upon information and belief,  Defendants intended to extort money from Talkdesk
23  through the threats and false allegations contained in this correspondence.
24         185.    Talkdesk suffered economic harm as a result of Defendants' threats, in an amount
25  to be determined at trial but comprising at least the value of lost employee time to respond to
26  these threats that would have otherwise been spent on other Talkdesk business tasks and attorney
27  fees and costs incurred by Talkdesk as a result of the attempted extortion.
28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

COMPLAINT
CASE NO. 3:22-CV-4515

## TWELFTH CAUSE OF ACTION – CIVIL CONSPIRACY

### (Against All Defendants)

186.    Talkdesk reincorporates and realleges paragraphs 1-83 above as if fully set forth herein.

187.    Upon information and belief, at some time between July 31, 2020 and the present, Defendants did knowingly and willfully conspire and agree among themselves to involve Pham in Engineer's ongoing contract dispute and make false allegations of wrongdoing against Talkdesk in an extortionate attempt to obtain an unwarranted payout from Talkdesk. Likewise, on information and belief, at some time between July 31, 2020 and the present, Defendants did knowingly and willfully conspire and agree among themselves to threaten Talkdesk with exposing "facts" that Pham claimed to possess as a result of having served as Talkdesk's in-house counsel unless Talkdesk agreed to a pay-off.

188.    As alleged in further detail above, and in furtherance of this conspiracy and agreement, Pham breached both his fiduciary duties and his contracts with Talkdesk by participating in Engineer's dispute with Talkdesk.

189.    As alleged in further detail above, and in furtherance of this conspiracy and agreement, Defendants sent correspondence to Talkdesk in an attempt to extort exorbitant sums of money from Talkdesk.

190.    As a result of this conspiracy, Talkdesk has suffered and continues to suffer damages in an amount to be determined at trial. Talkdesk has expended significant resources, both time and money, investigating and responding to the Defendants' extortionate claims.

191.    In addition to monetary damages, this conspiracy and the underlying offenses have caused and continue to cause irreparable harm to Talkdesk's business reputation.

## THIRTEENTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §17200, *et seq.*

### (Against All Defendants)

192.    Talkdesk reincorporates and realleges paragraphs 1-83 as if fully set forth herein.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 38 -

COMPLAINT
CASE NO. 3:22-CV-4515

1    193.    By committing the acts alleged herein, Defendants have violated California's

2    Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* by engaging in

3    unlawful, unfair, and fraudulent conduct.

4    194.    Defendants have violated the UCL's proscription against unlawful conduct as a

5    result of Defendant's violation of several common law claims, including: Engineer's interference

6    with Talkdesk's contractual relations by inducing Pham's violation of his contractual and

7    fiduciary duties, Pham's actual breach of his contractual and fiduciary duties, and the conspiracy

8    among Defendants to capitalize on these breaches by making an attempt to extort Talkdesk.

9    195.    Pham further violated the UCL's proscription against unlawful conduct by holding

10   himself out as an attorney in his interviews with Talkdesk and purporting to practice law in

11   California while neither licensed in California nor registered as in-house counsel with the

12   California State Bar, in contravention of the California State Bar Act (Cal. Bus. & Prof. Code § §

13   6125–6127) and the California Rule of Court (Rule 9.46).

14   196.    Defendants' acts and practices described above also violate the UCL's proscription

15   against fraudulent conduct.

16   197.    As more fully described above, Defendant Pham made fraudulent representations

17   to Talkdesk in the course of his hiring that were intended to deceive Talkdesk as to his ability to

18   practice law in the state of California.

19   198.    Further, and as more fully described above, Engineer knowingly submitted

20   fraudulent invoices to Talkdesk for payment not required under the MSA, with the intent to

21   deceive Talkdesk into believing that these charges were authorized.

22   199.    Defendants' acts and practices described above further violate the UCL's

23   proscription against engaging in unfair conduct.

24   200.    Talkdesk suffered a substantial injury as a result of hiring Pham and Engineer later

25   hiring Pham to involve him in their dispute with Talkdesk, by virtue of the costs it has incurred to

26   respond to and dispute Engineer's extortionate claims.

27   201.    There is no benefit to consumers or competition from Pham's and Engineer's

28   conduct.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 39 -

COMPLAINT
CASE NO. 3:22-CV-4515

1   202.   Talkdesk had no way of reasonably knowing that Pham made fraudulent

2   representations in his interviews with Talkdesk or that Engineer had involved Pham in their

3   disputes with Talkdesk. Thus, Talkdesk could not have reasonably avoided the injury it suffered.

4   203.   The gravity of the consequences of Defendants conduct as described above

5   outweighs any justification, motive, or reason therefore, particularly considering the legal

6   alternatives which exist in the marketplace, and such conduct is immoral, unethical,

7   unscrupulous, offends established public policy, or is substantially injurious to Talkdesk.

8   204.   In light of the foregoing allegations, Talkdesk seeks restitution in the form of the

9   repayment of all compensation paid to Pham.

10   205.   Talkdesk seeks an order under Cal. Bus. & Prof. Code § 17203 enjoining

11   Defendants' continued unlawful, fraudulent, and unfair conduct.

12   **FOURTEENTH CAUSE OF ACTION – DECLARATORY RELIEF**

13   **(Against Engineer)**

14   206.   Talkdesk reincorporates and realleges paragraphs 1-83 above as if fully set forth

15   herein.

16   207.   Under California Code of Civil Procedure § 1060, *et seq.*, the Court may declare

17   rights, duties, statuses, and other legal relations, regardless of whether other legal relief is or

18   could be claimed.

19   208.   An actual controversy has arisen between Talkdesk and Engineer as to their

20   respective rights and duties under the MSA.

21   209.   Resolution of the parties' respective rights and duties under the MSA by

22   declaration of the court is necessary, as there exists no adequate remedy at law.

23   210.   Talkdesk contends that the MSA allowed it the following right: "During the initial

24   term Client may cancel this agreement by providing Engineer.ai 30 days written notice of intent

25   to terminate this agreement, only if all sums due under this Agreement have been paid in full at

26   the date written notice is intended to be served on Engineer.ai."

27   211.   Talkdesk further contends that on September 18, 2020, Talkdesk provided notice

28   to Engineer of its decision to terminate the MSA pursuant to the terms of the contract, and that

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

COMPLAINT
CASE NO. 3:22-CV-4515

4142-9890-3612

Engineer refused Talkdesk's attempt to properly terminate the contract, thereby breaching the explicit terms of the MSA. In response to Talkdesk's notice, Engineer did not challenge whether Talkdesk fulfilled the requirements of the termination clause. Rather, Engineer took the position that the clause did not in fact give Talkdesk the option of termination.

212.    Talkdesk contends that pursuant to the notice provided on September 18, 2020, and with the termination of its use of Engineer's services on November 2, 2020, no contract has existed between Engineer and Talkdesk from November 3, 2020 to present.

213.    Talkdesk contends that Engineer wrongly continued to bill Talkdesk from November 2020 to February 2021 for use of its services after Talkdesk terminated the MSA and ceased using Engineer's services.

214.    Talkdesk therefore seeks a declaratory judgment that Talkdesk provided proper notice of its intent to terminate the contract on September 18, 2020, that the contract was validly terminated on November 2, 2020, and that it is not obligated to pay any invoice for any services provided by Engineer after that date.

## PRAYER FOR RELIEF

WHEREFORE, Talkdesk prays for judgment as follows:

A.    For rescission of the employment agreement between Talkdesk and Pham and the return of all compensation and stock paid to Pham;

B.    For damages not less than the amount of compensation paid to Pham for his work at Talkdesk and the costs that Talkdesk has incurred in responding to Pham's and Engineer's extortionary demands, which is an amount exceeding $75,000 to be proven at trial;

C.    For an order restoring to Talkdesk the shares of stock that Mr. Pham was able to obtain as a result of his work for Talkdesk and/or an award of damages equal to the value of such stock;

D.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

E.    Attorneys' fees and costs incurred by virtue of this action;

F.    A preliminary and permanent injunction enjoining Pham from breaching his ethical

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY
4142-9890-3612
- 41 -
COMPLAINT
CASE NO. 3:22-CV-4515

1    duties, enjoining Pham from contacting, assisting, or communicating with parties

2    who are adverse to Talkdesk, enjoining Pham from using or disclosing any Talkdesk

3    confidential or privileged information, enjoining Engineer from communicating

4    with Pham or using any confidential or privileged Talkdesk information, enjoining

5    Engineer from receiving assistance related to matters adverse to Talkdesk from

6    anyone who has received Talkdesk protected information, and ordering any other

7    relief necessary to address Mr. Pham's ethical breaches and prevent future ethical

8    breaches; and

9        G.     Such other and further relief as the Court may deem proper.

10

11   Dated: August 4, 2022                    AMY K. VAN ZANT
                                              Orrick, Herrington & Sutcliffe LLP

12

13                                            By: /s/  Amy K. Van Zant

14                                                 AMY K. VAN ZANT
                                                   Attorneys for Plaintiff

15                                                 TALKDESK, INC.

16

17                        **DEMAND FOR JURY TRIAL**

18       Talkdesk hereby demands a trial by jury on all causes of action so triable.

19   Dated: August 4, 2022                    Respectfully submitted,

20                                            ORRICK HERRINGTON & SUTCLIFFE LLP

21

22                                            By: /s/ Amy K. Van Zant

23                                                 Amy K. Van Zant
                                                   *Attorneys for Plaintiff Talkdesk, Inc.*

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4142-9890-3612

- 42 -

COMPLAINT
CASE NO. 3:22-CV-4515